# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

WENDY SUE HARKER,

               Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.

No. C15-2032-CJW

**MEMORANDUM OPINION AND ORDER**

———————————————

The claimant, Wendy Sue Harker (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security disability insurance benefits (DIB) and Supplemental Security Income benefits (SSI), under Titles II and XVI (respectively) of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining her residual functional capacity. For the reasons that follow, the court affirms the Commissioner's decision.

## I. BACKGROUND

Claimant was born in 1964, had attended special education classes when she was younger but not later in her schooling, and completed the twelfth grade. AR 58, 100.[1]

---

[1] "AR" refers to the administrative record below.

Claimant worked as a commercial and industrial cleaner, telephone solicitor, bus driver, cashier-checker, and a customer order clerk/personal shopper. AR 28. Claimant has a history of alcohol abuse and dependence, as well as marijuana use, though she claimed she has been sober since 2006. AR 21. Claimant alleged her disability began on December 1, 2011, due to anxiety, depression, fibromyalgia, and "back." AR 300, 308, 391.

On July 16, 2012, claimant protectively applied for DIB and SSI under Titles II and XVI under the Act. AR 300-18, 387. The Commissioner denied the claims on October 30, 2012, and denied reconsideration of the ruling on January 28, 2013. AR 169, 176. On March 19, 2013, claimant requested a hearing before an ALJ. AR 18. On April 21, 2014, and November 5, 2014, ALJ Tom Andrews conducted hearings at which claimant, John Harker, claimant's husband, and Randall L. Harding, a vocational expert, testified. AR 19, 39-98. On January 6, 2016, the ALJ issued a decision denying claimant's claim. AR 18-30. On March 13, 2015, the Appeals Council denied review. AR 1. The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On May 7, 2015, claimant filed a complaint in this court. Doc. 3. On September 28, 2015, with the consent of the parties, the Honorable Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 14. The parties have briefed the issues, and the matter is now fully submitted.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R.

§ 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do her past relevant work, then she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis*

*v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC is based on all relevant medical and other evidence.  *Id.* §§ 404.1545(a)(3), 416.945(a)(3).  The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC.  *Id.*  If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience.  *Id.* §§ 416.912(f), 416.920(a)(4)(v).  The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability.  *Id.* §§ 404.1545(a)(3), 416.945(a)(3).  The burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability.  42 U.S.C. § 423(d)(2)(C).  The ALJ must then evaluate the extent of the claimant's limitations without the substance use.  *Id.*  If the limitations would not be disabling, then the disorder is a

contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

### III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

(2)    The claimant has not engaged in substantial gainful activity since December 1, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; osteoarthritis; obesity; fibromyalgia, by report; mild COPD/emphysema; depressive disorder; anxiety disorder; and history ADHD [Attention Deficit Hyperactivity Disorder] (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    Claimant has the Residual Functional Capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.976(b) with the following additional limitations: need never climb ladders, ropes, poles or scaffolds; need no more than occasionally climb ramps and stairs, stoop, kneel, crouch or crawl; need no more than frequently balance; need no more than occasional exposures to extremes of cold or excessive vibrations, vibrating tools, machinery or hazards such as unprotected heights or elevations;

work of unskilled level, SVP of 1 or 2; work of no more than a regular pace defined as no fast-paced or strict quota-based or assembly line or production-type work; no more than occasional changes in the work setting.

(6) The claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

(7) The claimant was born in March 1964 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. §§ 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. §§ 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*See* SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and Residual Functional Capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2011, through the date of this decision. (20 C.F.R. §§ 404.1520(g) and 416.960(g)).

AR 20–30.

In arriving at his decision regarding claimant's residual functional capacity, the ALJ relied on the following medical opinions in the record by Dr. Kyle Christiason, M.D.,[2] Dr. Natasha Minnaert, D.O., and Dr. Seth A. Brown, Ph.D.  AR 23-26.

Dr. Christiason

On February 22, 2011, Dr. Christiason performed a consultative examination of claimant.  AR 610-11.  Claimant's husband accompanied her and both of them provided history to Dr. Christiason, which he found "disjointed and difficult to detail."  AR 610.  Claimant's primary complaints were of back, abdominal, and leg pain.  AR 610.  Dr. Christiason's "opinions" consisted of a recitation of the following subjective statements by claimant.  Claimant stated she was limited to lifting ten pounds, or else she would feel pain in her back, abdomen, and legs.  AR 611.  She further claimed that cold weather worsened her pain diffusely.  *Id*.  She stated she typically was able to stand for a very short duration, providing example of being unable to clean a sink full of dishes at one time.  *Id*.  Claimant stated she "is able to walk up to two blocks[,] but has a lot of pain doing so."  *Id*.

The ALJ gave Dr. Christiason's opinion little weight (but not because of the disjointed self-reported medical history).  AR 23.  Rather, the ALJ afforded little weight to Dr. Christiason's opinions because the limitations Dr. Christiason found "were largely self-assessed and inconsistent with the limited findings on examination."  AR 28.  For example, Dr. Christiason found claimant's motor strength, reflexes, and sensation were intact.  AR 23, 611.  Dr. Christiason also observed claimant walks with a slow, but unassisted gait and stand on her toes and heals.  *Id*.  Claimant was able to get on and off the examination table with only "mild assistance."  *Id*.

---

[2] The ALJ's decision misspells this name as "Christiansen" (AR 23), but the medical records reflect the more uncommon spelling "Christiason" (AR 611).

Dr. Minnaert

On October 19, 2012, Dr. Minnaert performed a consultative examination of claimant. AR 716-18. Claimant told Dr. Minnaert that she was "applying for disability for the second time . . . based on her depression/anxiety, back pain, and fibromyalgia." AR 716. Claimant reported a history of depression for "many years" and stated she had "been evaluated by a psychiatrist in the past" and treated with prescription medication, but "does not currently see a psychiatrist or counselor and does not take any antidepressants at this time." *Id.* She claimed she attempted suicide in 2006 and still has suicidal ideations, but no current plans. *Id.* She reported her anxiety was diagnosed in 2009 and "is exacerbated by loud noises and gets better when in a calm environment." *Id.* She stated this condition was likewise historically treated with prescription medication, but she again stated she "does not currently see anyone or take any medications for her anxiety." *Id.* Claimant self-reported back pain "for her whole life" and that she "currently suffers from sciatica." *Id.* Claimant told Dr. Minnaert she has a "back deformity" and "is going to be scheduled with a back surgeon for an evaluation for back surgery." *Id.* She had not participated in physical therapy recently or been to see a pain specialist. *Id.*

Dr. Minnaert noted that, during her physical examination of claimant, claimant exerted "fair" to "poor" effort. AR 717. Specifically, Dr. Minnaert found claimant had 4/5 strength in her upper extremities with "fair effort" and 3/5 strength in her lower extremities with "poor effort." *Id.* Claimant displayed normal gait, station, and back conditions during the examination. *Id.*

Dr. Minnaert opined that claimant could lift ten pounds and stand, walk, move about, and sit for short periods of time. AR 718. Dr. Minnaert further opined that claimant would benefit from some physical activity. *Id.* Taking into account claimant's subjective complaints of pain when standing or sitting from long periods of time, Dr.

Minnaert concluded that claimant "may be a candidate for employment in a position where she could switch positions or move about somewhat freely." *Id.* Finally, Dr. Minnaert concluded that, without further medical treatment, claimant "would not be a good candidate for positions where she is required to travel, stoop, kneel, or crawl." *Id.*

The ALJ afforded little weight to Dr. Minnaert's opinion. AR 28. The ALJ noted that Dr. Minnaert's strength findings, based on "fair" to "poor" effort by claimant during the examination, were inconsistent with other examinations which showed normal strength. AR 24, 606-07, 728, 954. The ALJ found Dr. Minnaert's opinion inconsistent with claimant's normal gait, station and back movement during the examination. AR 24.

Dr. Brown

On October 10, 2012, Dr. Brown completed a psychological evaluation of claimant. AR 707-10. Dr. Brown noted that claimant "appears to have some difficulty sustaining attention as well as keeping up with the pace of work expected of her." AR 709-10. Claimant reported to Dr. Brown that she had difficulty "adapting to some changes in the work place." AR 710. Dr. Brown found claimant was pleasant and cooperative, had good eye contact, her speech was clear and articulate, and she had no gross motor or sensory impairments. AR 707. He found her memory intact. AR 717, 742. During testing, claimant did not consistently endorse psychiatric symptoms, denying anxiety and depression. AR 757. Noting claimant's reported history of ADHD, Dr. Brown opined that it likely impacted her daily activities. AR 710. Otherwise, Dr. Brown opined claimant's mental status was relatively intact. *Id.* Although he noted that claimant reported some symptoms resembling depression, he could not diagnose her with that mental illness. *Id.*

The ALJ gave significant weight to Dr. Brown's opinion that claimant had ADHD, based on her reported history of the disease. AF 28. The ALJ noted that the lack of

psychiatric symptoms continued in later visits in 2013-2014.  AR 832, 834, 838, 855, 866, 877, 919.

## IV.    *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a decision." *Wright*, 542 F.3d at 852 (quotation and citation omitted).  The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).   The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidenced may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") (internal citation omitted).

## V.   DISCUSSION

Claimant argues the ALJ's decision is flawed for three reasons:

1.   The ALJ failed to properly evaluate the work-related limitations identified by the three consultative examiners: Drs. Christiason, Minnaert and Brown. Doc. 13, at 15-25

2.   The ALJ erred when he found claimant's colitis and chronic obstructive pulmonary diseases did not constitute "severe" impairments. Doc. 13, 25-29.

3.   The ALJ's RFC assessment is not supported by substantial evidence
     from a treating or examining source.  Doc. 13, 29-31.

The court will address these arguments separately below.

### A.  RFC Determination - Applicable Standards

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations."   20 C.F.R. § 404.1545(a)(1).   "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004).   This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  *See also Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (an ALJ is required to "determine the claimant's FRC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations."). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).   The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646.  At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence.  *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).  Moreover, an "ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).   The RFC must only include those impairments which are

substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

## B. Whether The ALJ Properly Evaluated Opinions by Consultative Doctors in Determining Claimant's RFC

Claimant argues the ALJ failed to properly evaluate the medical doctor's opinions, and also argues the ALJ failed to properly evaluate the opinion of the psychologist. The court finds the ALJ did not err in his evaluation.

### 1. Drs. Christiason & Minnaert

The court finds the ALJ considered the opinions of the consulting medical personnel and finds there is substantial evidence in the record to support the ALJ's residual functional capacity determination. "Some medical evidence" must support the ALJ's residual functional capacity assessment. *Lauer*, 245 F.3d at 704. Nevertheless, a residual functional capacity determination is not a medical opinion, but is an administrative assessment, based on all the evidence of record, of the extent that a claimant's impairments and related symptoms affect his capacity to perform work-related activities on a regular and continuing basis. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2. Thus, it is the ALJ, not a physician, who has the sole responsibility for determining the claimant's residual functional capacity. *See Stormo*, 377 F.3d at 807; 20 C.F.R. § 404.1527(e)(2); SSR 96-5p, 1996 WL 374183, at *2. A medical consultant's opinion is an expert opinion from a highly qualified source that the ALJ must consider. *See* 20 C.F.R. § 404.1527(f)(2); *see also* SSR 96-6p, 1996 WL 374180 (July 2, 1996). When assessments of state agency medical consultants are consistent with other medical evidence in the record, as is the case here, they can provide substantial evidence

supporting the ALJ's residual functional capacity assessment. *See Stormo*, 377 F.3d at 807-08.

The ALJ considered the opinions of Drs. Christiason and Minnaert, but afforded them little weight. The ALJ was within his discretion in doing so. The ALJ gave little weight to these opinions in part because they were based largely on claimant's subjective statements. *See Kirby*, 500 F.3d at 709 (an ALJ may find an opinion is based largely on a claimant's subjective complaints where there is little objective medical evidence to support a physician's opinion). Dr. Minnaert's opinion was also based on a physical examination where claimant did not exert full effort. AR 717. *See Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) ("The ALJ was entitled to draw conclusions about Baker's credibility based on the FCE pain-replication and distraction analyses indicating that Baker was exaggerating symptoms and giving less than his full effort."). The ALJ also afforded these doctors' opinions little weight, explaining that their opinions as to claimant's physical limitations were inconsistent with the doctors' own physical examinations and other medical evidence in the record as a whole. AR 28. *See, e.g.*, *Michael v. Colvin*, No. 14-3460, at 17 (8th Cir. Mar. 23, 2016 slip opinion) (finding ALJ did not err in giving little weight to physician's opinion when it was contradicted by other acceptable medical sources in the record); *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (holding that a physician's opinion is entitled to less weight when it is inconsistent with the physician's own findings). Finally, the ALJ was entitled to consider that claimant's failure to pursue physical therapy or pain management (AR 717) as evidence that her subjective complaints were inconsistent with her actual limitations. *See*, *e.g.*, *Ostronski v. Chater*, 94 F.3d 413, 318 (8th Cir. 1996) (holding that claimant's use of over the counter pain relievers showed her pain was not so severe as to preclude light exertional work); *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (finding that claimant's failure to pursue treatment was inconsistent with claimed limitations).

Claimant argues that the ALJ "failed to recognize that the claimant was lying down on the examining table when Dr. Christiason entered the examining room and she sat up only when coaxed" and "needed assistance getting on and off the examining table." Doc. 13, at 19. An ALJ is not required to discuss all submitted evidence and an ALJ's failure to cite to evidence does not mean the ALJ did not consider the evidence. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (internal quotation and citation omitted). *See also Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Finally, the record indicates claimant needed only "mild" assistance getting on and off the examining table. AR 611.

Claimant argues that the ALJ should have disregarded her failure to seek medical care because she had financial limitations. AR 13, at 19-20. There is no evidence in the record, however, showing that medical providers declined treatment due to insufficient funds or insurance. This court cannot find the ALJ erred when such evidence is lacking. *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) (rejecting excuse that claimant did not seek medical care because of financial difficulties when there was nothing in the record to support the assertion). Although the record shows that at times she did not have insurance (AR 779, 814, 848), it does not indicate why she did not have insurance and whether she was unable to obtain insurance, or simply did not do so. Moreover, the record does show plaintiff continued to use alcohol, tobacco, and marijuana. AR 23, 26, 708, 726, 736, 743, 757, 832, 844, 884, 930. These expenditures belie her claim that she was unable to afford treatment and medication. *See, e.g.*, *Brooks v. Colvin*, Case No. 2:14CV108 ACL, 2016 WL 931192, at *7 (E.D. Mo. Mar. 11, 2016) (finding the ALJ could properly reject claimant's assertion of financial hardship when the record showed that, despite some financial difficulty, claimant spent money on

cigarettes); *Sisney v. Colvin*, Case No. 3:15CV0001-BD, 2015 WL 4512264, at *3 (E.D. Ark. July 24, 2015) (affirming ALJ's finding that claimant's assertion she could not afford medication was inconsistent with her expensive one-pack a day cigarette habit); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (upholding ALJ's decision where claimant's lack of funds to pay for treatment was inconsistent with expenditures of funds for a three-pack a day smoking habit).

Claimant argues that medical evidence obtained after Drs. Christiason and Minnaert examined her support their opinions (Doc. 13, at 20-23), while the Commissioner points at the same records to reach the opposite conclusion (Doc. 16, at 10-12). The ALJ stated that he considered the entire record (AR 20, 22), and although he does not cite specifically to all of the information claimant cites in her brief, it is clear from the record that he thoroughly examined the later medical evidence. Having reviewed the records as a whole, the court concludes the additional medical evidence does not undermine the ALJ's decision. Some of the evidence could be seen as supporting some of her complaints, but much of it further supports the reasonableness of the ALJ's conclusions. *See Kluesner*, 607 F.3d at 536 (holding that if the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits.").

Plaintiff also argues that the ALJ did not adequately consider the combined effects of her physical impairments. Doc. 13, at 21-22. The ALJ did, however, conclude that claimant's impairments, "singly and in combination," did not rise to the level of severity of one of the listed impairments. AR 21. That is sufficient. *See*, *e.g.*, *Browning*, 958 F.2d at 821 (finding ALJ's statements that claimant's "impairments do not prevent [her] from performing her past relevant work" was sufficient to demonstrate the ALJ

considered the combination of impairments and "to require a more elaborate articulation of the ALJ's thought processes would not be reasonable."); *Priel v. Astrue*, 453 Fed. App'x 84, 87 (2nd Cir. 2011) (ALJ's statement that he considered the impairments "singly and in combination" was sufficient to demonstrate the ALJ considered the combined effects of impairments); *Kunik v. Colvin*, 996 F. Supp. 2d 751, 761 (N.D. Iowa 2014) (same).

2. Dr. Brown

Claimant argues that the ALJ erred in evaluating Dr. Brown's opinion, asserting she "endorsed a pattern of symptoms consistent with a diagnosis of depressive disorder" and the record does not support the ALJ's conclusion that her mental status was "largely intact" and "largely preserved." Doc. 13, at 24 (citing AR 25, 28). The ALJ did not reject Dr. Brown's opinion, however; the ALJ indicated he gave significant weight to Dr. Browns' opinion that claimant experienced attention deficits. AR 28. Further, Dr. Brown noted that claimant had some symptoms "resembling" depression, but he declined to diagnose her with that mental illness. AR 710. Contrary to claimant's argument that the record does not support the ALJ's finding that claimant's mental status was largely intact or preserved, Dr. Brown did opine that claimant's mental status was "relatively intact." AR 710. Moreover, the rest of the medical evidence supports this conclusion. AR 717, 742, 757, 758, 770, 817, 832, 834, 836, 838, 855, 866, 877, 906, 910, 931, 949.

In sum, the court finds substantial evidence supports the ALJ's conclusions regarding claimant's residual functional capacity.

### C. Whether The ALJ Erred in Finding Claimant's Colitis and COPD did Not Constitute "Severe" Impairments

Claimant argues the ALJ erred in finding that claimant's colitis and COPD did not constitute "severe" impairments. Doc. 13, at 25-29. The ALJ found claimant exhibited a number of severe impairments, including degenerative disc disease, osteoarthritis, obesity, and fibromyalgia. AR 20. The ALJ specifically included in this list COPD/emphysema. AR 20-21. In this regard, claimant is simply mistaken when she claims the ALJ failed to list it as a severe impairment.

The ALJ did not, however, find claimant's colitis was a severe impairment. An impairment is "severe" if it significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§404.1520(c) & 416.920(c). A claimant must demonstrate more than a minimal effect on the ability to perform basic work activities. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). Although "severity is not an onerous requirement for the claimant to meet . . . it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708.

The ALJ considered claimant's colitis, but found "the record failed to support the degree of limitation or frequency of stooling alleged." AR 27. The record failed to show that claimant sought treatment for this condition between 2011 and 2012. AR 21, 27. A lack of treatment is inconsistent with a severe impairment. *Kirby*, 500 F.3d at 709. Although claimant again seeks to explain this away because of lack of funds, the court has already found the ALJ did not err in rejecting that explanation when claimant was able to spend funds on alcohol, tobacco, and marijuana. On the other hand, when claimant did take medication, her condition improved (AR 21, 844), which means her condition was not severe. *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). Finally, claimant did not suffer weight loss that would be consistent with the disease. AR 21, 757-58, 769, 902, 914, 936, 960. In fact, she gained weight. AR 807, 831, 930, 933.

The ALJ properly took this into account. *Thompson v. Colvin*, Case No. CIV 13-2160, 2014 WL 2510567, at *6 (W.D. Ark. June 4, 2014) (ALJ properly considered the lack of weight loss as inconsistent with a claim of disabling diarrhea). Considering the record as a whole, and having the opportunity to see claimant testify, the ALJ found "claimant less than fully credible." AR 27.

Accordingly, the court finds there is substantial evidence to support the ALJ's assessment.


### D. Whether Substantial Evidence Supported the ALJ's RFC Determination

Claimant argues the ALJ's RFC assessment was flawed. Doc. 13, at 29-31. Claimant takes issue with the ALJ affording "great weight" to the opinions of the non-examining state agency medical consultants, and argues the ALJ failed to fully develop the record. Doc. 13, at 29. The ALJ did give great weight "to the State agency physical and psychological assessments directing for a range of unskilled work within light of physical demands" consistent with claimant's limitations. AR 28. He was allowed to do so. *See* Social Security Ruling 96-6p ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."). *See also Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). But, the ALJ did not rely on their findings alone. Without a treating physician upon which to rely, the ALJ took into consideration the opinions of Drs. Christiason, Minnaert, and Brown (although he afforded them little weight) and the rest of the objective and subjective evidence. *Id*.

Claimant argues that if the ALJ found the examining doctor's opinions insufficient, he had a duty to further develop the record. Doc. 13, at 30. Social security disability hearings are non-adversarial proceedings. *Stormo,* 377 F.3d at 806. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (internal citation omitted). The ALJ's duty exists even when an attorney represents a claimant. *Id.* "There is no bright line test for determining when the [Commisioner] has … failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). A claimant "bears a heavy burden in showing the record has been inadequately developed." *Combs v. Astrue*, 243 Fed. App'x 200, 204 (8th Cir. 2007). She "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Id. See also Haley v. Massanari*, 258 F.3d 742, 749–750 (8th Cir. 2001) (holding "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"; ALJ may issue decision without obtaining additional evidence if existing evidence provides sufficient basis for decision (quotations and citations omitted)).

Here, the ALJ referenced the medical records, opinions, and testimony at length. The ALJ was not required to further develop a record; the ALJ is only required to develop the record if the information presented is insufficient. *See McCoy*, 648 F.3d at 612 (ALJ has duty to develop record, but duty is not never-ending and ALJ is not required to disprove every possible impairment; ALJ is required to order medical tests and examinations only if medical records presented to him do not give sufficient medical evidence to determine if claimant is disabled). Given the substantial evidence, the court finds that there was no crucial issue left undeveloped, so the ALJ was not required to seek additional clarifying statements. Indeed, this is not a case where the record was not

sufficiently developed; it is a case where the ALJ evaluated all the information in the record. Claimant has not identified additional testing or evaluations that she claims the ALJ should have ordered. Rather, she is simply unhappy with the conclusion the ALJ reached from an evaluation of the record. Claimant has not carried her burden of showing the record was inadequately developed.

Finally, claimant argues the alleged errors are not harmless, reasoning that the limitation imposed—the inability to sustain attention and concentration—is inconsistent with competitive employment. Doc. 13, at 32. She further argues that she is aging and if limited to sedentary work, she is disabled. *Id*. The record shows that Dr. Brown found only that claimant had some difficulty sustaining attention and keeping up with the pace of work expected of her. AR 709-10. Moderate limitations in attention and concentration like this are consistent with simple, routine, and repetitive tasks involved with unskilled labor. *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Moreover, the ALJ did not find claimant was limited to sedentary work; rather, he found she was limited to unskilled work. AR 22. The court has found substantial evidence to support the ALJ's decision to give little weight to the opinions of Drs. Christiason and Minnaert suggesting claimant should be limited to sedentary work. AR 28. The record provides substantial evidence to support the ALJ's conclusion that claimant could perform a range of light work. AR 22.

## *VI. CONCLUSION*

After a thorough review of the entire record, the court concludes the ALJ's decision to deny claimant's disability benefits is supported by substantial evidence on the record as a whole.

Accordingly, the court **affirms** the decision of the ALJ.

**IT IS SO ORDERED** this 20th day of June, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa